**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3808
_____

JEROME JUNIOR WASHINGTON,
Appellant

v.

SUPERINTENDENT GILMORE; PA-C  HAMMER;
CHCA STEPHANIE WOOD, BSN MBA, CCHP;
CHCA  NICHOLSON; DIRECTOR MS.  SMITH, are all being
sued in his or her individual capacities and official capacities
under the United States declared penalty of perjury
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-01558)
Magistrate Judge:  Honorable Lisa P. Lenihan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 9, 2020
Before:  KRAUSE, MATEY, and ROTH, Circuit Judges

(Opinion filed: February 3, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Jerome Washington, an inmate at SCI Greene, filed a civil rights complaint grounded in the defendants' failure to provide adequate medical care.[1] He alleged that he first saw Defendant Smyth,[2] a doctor at the prison, in his cell for a sick call, during which Smyth informed him that he would not need stronger medication for his arthritis because anti-inflammatory steroid injections would ease his pain. Washington complained that he had not received the injections and Smyth explained that the doctor who was supposed to administer the injections forgot and was now on vacation so she would have to get another doctor to do it. See Compl. at 4.

A week later, Smyth again appeared at Washington's cell for a sick call. Smyth again explained that arthritis was a chronic condition that could be managed with steroid injections and anti-inflammatory medication to help with the pain and said that she would not prescribe a stronger painkiller. Washington said that he still had not received the injections, but Smyth said that the doctor who had been tasked with administering the injections had quit and that the new doctor would be starting the following week. Washington requested an x-ray for his elbows, but Smyth informed Washington that x-rays were not necessary. Washington then complained of rectal bleeding when he used the bathroom and explained that he had previously undergone two surgeries to remove

---

[1] Because we write primarily for the benefit of the parties, we will recite only the facts necessary for the discussion.

[2] In his complaint, Washington incorrectly referred to Smyth as "Smith."

hemorrhoids, the last being on March 23, 2013. Smyth told Plaintiff that she would follow up on his complaints. See Compl. at 4–5.

About two months later, Defendant Hammer, a physician's assistant at the prison, saw Washington for a sick call. Hammer acquiesced to Washington's requests that he undergo stool sampling. Washington again complained of his "chronic injuries" and said he wanted an explanation for why he was not receiving the specific treatment and medications that he requested. Hammer explained that Washington's condition had not changed since his last sick call, and when Washington continued to protest about his hemorrhoids, Hammer told him that he could come to the medical ward for a rectal exam if he wished. Hammer also explained that stronger medication was not necessary for arthritis.[3] See Compl. at 7–8.

The District Court[4] granted Hammer's and Smyth's motion to dismiss and dismissed the other defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). It reasoned that Washington only complained of a "serious medical need" regarding his arthritis and hemorrhoids and determined that Hammer and Smyth were attentive to his needs around

---

[3] Washington also included allegations against Smyth and Hammer relating to glaucoma and cataracts in both of his eyes, as well as a tear under both of his pupils. Because Washington has not challenged the District Court's determination that hemorrhoids and arthritis were the only "serious medical needs" alleged, we will focus on the allegations relating to those injuries only.

[4] The judgment was issued by the Magistrate Judge, proceeding with the parties' consent pursuant to 28 U.S.C. § 636(c)(1).

those issues. The court concluded that the other defendants were merely corrections officials who were not personally involved in the alleged wrongs. Washington appealed.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the grant of a motion to dismiss pursuant to Rule 12(b)(6). See Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).

To state a claim under the Eight Amendment, a plaintiff must allege that the defendants were deliberately indifferent to a serious medical need. Gamble v. Estelle, 429 U.S. 97, 104 (1978). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Though the District Court dismissed the claims after reasoning that the medical staff was "quite attentive to [Washington's] medical needs," we disagree. Washington claimed that he first informed Hammer of the complications due to his hemorrhoids in June, 2018, and that Hammer was aware that Washington potentially needed surgery. Though Hammer informed Washington that he would review a stool sample to obtain more information, Hammer allegedly never collected the sample, and offered Washington

4

a rectal examination nearly two months after he was informed of the issue. Washington's later filings reveal that he was taken to an outside hospital almost a year after informing Hammer of the issue because of the severity of the bleeding. Washington's reasonable requests for hemorrhoid treatment were allegedly deferred by Hammer for no good medical reason during multiple sick calls as Washington's condition deteriorated.

Moreover, Washington pled enough facts to state a claim of deliberate indifference with respect to the treatment of his arthritis. He alleged that Smyth told him that steroid injections were prescribed to control his arthritis. Washington repeatedly asked to receive the injections but was told at various points that he could not be treated because another doctor was either on vacation, had forgotten, or had quit. At this point in the litigation, accepting the factual matter in the complaint as true, such allegations amount to "delayed medical treatment for non-medical reasons" or "the denial of reasonable requests for treatment that resulted in suffering." See Durmer, 991 F.2d at 68.

Accordingly, we will vacate the judgment to the extent that it dismissed the claims against Hammer and Smyth and remand for further proceedings. We will otherwise affirm.